UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CELGENE CORPORATION,**<br><br>Plaintiff,<br><br>vs.<br><br>**DISTINCT PHARMA and JOHN DOES #1-10,**<br><br>Defendants. | No. 2:17-cv-5303-KM-JBC<br><br>**OPINION** |

### KEVIN MCNULTY, U.S.D.J.:

This is an action asserting claims of Trademark Infringement (Count I), Unfair Competition (Count II), and False Designation of Origin (Count III) under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and violation of the New Jersey Deceptive Trade Practices Act (Count IV).[1] Plaintiff Celgene Corporation, a Delaware corporation, sues Distinct Pharma, an entity located in Mumbai, India, for unauthorized and regulatorily unapproved internet sales of Celgene's drug REVLIMID® (lenalidomide). Defendant Distinct Pharma has not responded to the complaint and the clerk has entered default. For the reasons stated herein, Celgene's motion for default judgment is denied without prejudice to renewal in light of further facts about the Indian government's efforts, if any, to serve the defendant.

---

[1] Count IV is titled "New Jersey Deceptive Trade Practices Act," and it cites N.J. Stat. Ann. 56:8-2, which identifies fraud in connection with sale or advertisement of merchandise as an unconscionable practice. Such an unconscionable practice is actionable under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-19.

1

## I. DISCUSSION

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the court must determine whether the "unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *DirecTV, Inc. v. Asher*, No. 3-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright & Miller, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, No. 12-cv-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations in the complaint. *Id.* at *2-3.

Before a court can enter a default judgment, the court must be satisfied of personal jurisdiction and effective service of process.

### A. Personal Jurisdiction

Personal jurisdiction, unlike subject matter jurisdiction, may be waived, and a court generally will not raise personal jurisdiction *sua sponte* as grounds for dismissal. *See Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). Nonetheless, when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects. *See id.*; *Bolden*

2

*v. Se. Penn. Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991) (citing *Mansfield, Coldwater & Lake Michigan R.R. v. Swan*, 111 U.S. 379, 382 (1884)). If a court lacks personal jurisdiction over a defendant, the court does not have authority to render a default judgment, and any such judgment will be deemed void. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). "In the absence of an evidentiary hearing, a plaintiff's complaint need only establish a *prima facie* case of personal jurisdiction." *Allaham*, 635 F. App'x at 36-37 (citing *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). If an evidentiary hearing is held, a plaintiff bears the burden of proving that the court has personal jurisdiction over the defendant by a preponderance of the evidence. *See Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see* Fed. R. Civ. P. 4(k)(1)(A) (authorizing the exercise of personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). In a state such as New Jersey, where the long-arm statute allows the exercise of personal jurisdiction to the full extent permitted by the Constitution, the standard for a federal court sitting in diversity is whether a "defendant ha[s] 'minimum contacts,'" such "that the exercise of jurisdiction comport[s] with 'tradition notions of fair play and substantial justice.'" *Allaham*, 635 F. App'x at 37 (*Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy*

*Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). A court has specific jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Celgene does not claim that this court has general jurisdiction over Distinct Pharma. Rather, Celgene argues that the court has specific jurisdiction because Distinct Pharma sells its allegedly infringing pharmaceuticals in places including New Jersey.

To satisfy federal due process limits (incorporated by the New Jersey long-arm statute), a defendant's minimum contacts are examined in relation to "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). "[T]he relationship among the defendant, the forum, and the litigation ... [is] the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). For specific jurisdiction, the Supreme Court has delineated three due process requirements: First, the plaintiff must demonstrate that the defendant "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks omitted). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the plaintiff satisfies the first two requirements, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476) (internal quotation marks omitted).

A defendant can be subject to personal jurisdiction in a state it never entered:

4

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476.

Celgene has pled a prima facie case of specific jurisdiction. First, Celgene alleges that Distinct Pharma purposefully directed his activities to New Jersey. It is alleged that Distinct Pharma sold pharmaceutical products directly to customers in New Jersey (and elsewhere in the United States). (Compl. ¶ 22) *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011) (noting the difference, for personal jurisdiction purposes, between directly selling products to a forum and products that end up in a forum because of the stream of commerce). Second, the litigation arises out of this activity. Those alleged New Jersey sales are sales of the very products that, according to Celgene's complaint, violate federal and state trademark and unfair competition laws. Third, the exercise of jurisdiction comports with "fair play and substantial justice." Factors to consider in this inquiry include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *see also Burger King*, 471 U.S. at 477. These factors do not weigh against a finding of personal jurisdiction.

### B. Service of Process

Service of process must satisfy both the statute under which service is effectuated and constitutional due process. When the defendant resides abroad, the statutory prong is governed principally by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, an international treaty that has been ratified by several countries, including the United States and India. As a ratified treaty, the Hague Convention is "the supreme Law of the Land." *See* U.S. Const. Art. VI, cl. 2; *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir. 1986).

Article 15 of the Hague Convention permits default judgments against a foreign defendant as long as:

> (a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

*Convention Done at the Hague Nov. 15, 1965*, art. 15, 20 U.S.T. 361. There is no evidence here, however, that Distinct Pharma was served by any method.

Celgene thus turns to another provision of the Hague Convention, which provides for a default judgment without service of process. Under that provision, a default judgment can be rendered against a foreign defendant that did not receive service of process if:

> (a) the document was transmitted by one of the methods provided for in this Convention,
>
> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Convention, Art. 15.

6

Article 5 of the Convention permits service via a "Central Authority" of the country in which service is to be made.[2] Celgene has submitted an affidavit attesting that the appropriate documents were delivered to the "Central Authority" of India on August 16, 2017. (ECF No. 7). Furthermore, according to the affidavit, Celgene submitted two letters to the Central Authority requesting a status update. Those letters were delivered to the Central Authority of India on December 14, 2017 and February 5, 2018. (*Id.* Exs. 3, 4, 5). Celgene has not received a certificate (or, apparently, any kind of reply), and approximately a year has elapsed. (*Id.*). Those actions satisfy the statutory requirements of service of process under the Hague Convention.

Nonetheless, a separate inquiry is necessary to determine if the constitutional due process requirements have been satisfied. Foreign nationals are assured under the Due Process Clause "of either personal service, which typically will require service abroad and trigger the [Hague] Convention, or substituted service that provides notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988) (citing *Mullane v.*

---

[2] Articles 2 and 5 of the Hague Convention delineate how a plaintiff can effectuate process on an international party through a "Central Authority." Article 2 provides, in pertinent part:

> Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.

Hague Convention, Art. 2. Article 5 provides, in pertinent part:

> The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—
>
> > (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
> >
> > (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Hague Convention, Art. 5.

*Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)) (internal quotation marks omitted).

Compliance with the Hague Convention does not necessarily satisfy due process. The Supreme Court of Nevada explained in *Grupo Famsa*:

> [C]onstitutional due process is not necessarily satisfied merely because the foreign nation's central authority has issued a certificate of compliance. We recognize the Hague Convention, like our nation's concept of due process, works to ensure judicial documents are brought to the attention of the defendant within a reasonable time. However, we are not convinced that a constitutional inquiry is inappropriate or unnecessary where the Hague Convention applies. Indeed, a due process inquiry is necessary to ensure the veracity of the certificate when the underlying facts are contested.

*Grupo Famsa v. Eighth Jud. Dist. Ct.*, 371 P.3d 1048, 1051 (Nev. 2016) (internal quotations omitted). Additionally, "many jurisdictions have either explicitly or implicitly held that whether service complies with the Constitution is a separate, albeit related, question from whether service complies with the Hague Convention." *Id.*; *see, e.g., Burda Media, Inc. v. Viertel*, 417 F.3d 292, 303 (2d Cir. 2005) ("[I]n addition to the Hague Convention, service of process must also satisfy constitutional due process."); *Lidas, Inc. v. United States*, 238 F.3d 1076, 1084 (9th Cir. 2001) (suggesting that, although the Hague Convention did not require actual receipt of notice of an IRS summons, a constitutional due process inquiry was still necessary); *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986) ("Service of process must satisfy both the statute under which service is effectuated and constitutional due process. The statutory prong is governed principally by the Hague Convention...."); *Heredia v. Transp. S.A.S., Inc.*, 101 F. Supp. 2d 158, 162 (S.D.N.Y. 2000) ("In addition to the Hague Convention, service of process must also satisfy constitutional due process."); *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 474 (D.N.J. 1998) ("Service of process must satisfy both the statute under which service is

8

effectuated [in this case, the Hague Convention] and constitutional due process." (internal quotation marks omitted)).

It would therefore be inappropriate to conclude, without further fact finding, that the Central Authority of India's service efforts, if any, whatever they may have been, satisfied due process requirements. *Grupo Famsa*, for example, held that fact finding was necessary to determine if a certificate of compliance from a foreign nation's Central Authority satisfied due process. 371 P.3d at 1051-52.

The facts of this case are yet another step removed from those found *not* sufficient in *Grupo Famsa*. Celgene has not received certificate of compliance from India's Central Authority. There is no evidence that the Central Authority of India engaged in any efforts whatever to serve process. I do not say that they have not, but Celgene submits no evidence that they have. Since the Central Authority's actions are unknown, there is no basis to conclude that its service efforts complied with our Constitution's due process standards. *Cf. Burda Media*, 417 F.3d at 303 (finding that, "in addition to the Hague Convention," service of process must also satisfy constitutional due process, which can be met by service of process by personal delivery). Evidence is needed to determine whether attempts at service—if any—were "reasonably calculated, under all the circumstances, to apprise [Distinct Pharma] of the pendency of the action and afford [him] an opportunity to present [his] objections." *Mullane*, 339 U.S. at 314.

In sum, before a court may enter a default judgment, the court must determine whether service of process complied with statutory and constitutional due process standards. For Celgene, this is a frustrating situation, to be sure. Celgene has demonstrated that its compliance with the Hague Convention was answered by silence. Still, due process requires evidence that the attempts of India's Central Authority to serve the defendant satisfied due process, and as to that issue the court has no information. Celgene's motion for default judgment is thus denied without prejudice to the

9

submission of additional information about what efforts, if any, were made to serve the defendant in India.

## II. CONCLUSION

For the foregoing reasons, Celgene's motion for default judgment is denied, without prejudice. An appropriate order accompanies this opinion.

Dated: September 6, 2018

                                          **KEVIN MCNULTY**
                                          **United States District Judge**