UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CELGENE CORPORATION,

Plaintiff,

vs.

DISTINCT PHARMA and JOHN DOES #1-10,

Defendants.

No. 2:17-cv-5303-KM-JBC

OPINION

## KEVIN MCNULTY, U.S.D.J.:

This is an action asserting claims of Trademark Infringement (Count I), Unfair Competition (Count II), and False Designation of Origin (Count III) under the Lanham Act, 15 U.S.C. § 1051 *et seq.*; and violation of the New Jersey Deceptive Trade Practices Act (Count IV).[1] Plaintiff Celgene Corporation, a Delaware corporation, sues Distinct Pharma, an entity located in Mumbai, India, for unauthorized and regulatorily unapproved internet sales of Celgene's drug REVLIMID® (lenalidomide). Defendant Distinct Pharma has not appeared or responded to the complaint. The court denied Celogen's prior motion for default judgment for lack of proof of service that satisfied the requirements of due process. (Opinion filed September 6, 2018, DE 10; Order, DE 11) Since that time, Celgene has filed proof of service (DE 12); the clerk has again entered

---

[1] Count IV is titled "New Jersey Deceptive Trade Practices Act," and it cites N.J. Stat. Ann. 56:8-2, which identifies fraud in connection with sale or advertisement of merchandise as an unconscionable practice. Such an unconscionable practice is actionable under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. 56:8-19.

1

default (DE 13 and entry following); and Celgene has renewed its motion for a default judgment (DE 14). For the reasons stated herein, the renewed motion for a default judgment is granted.

## I. DISCUSSION

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the court must determine whether the "unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *DirecTV, Inc. v. Asher*, No. 3-cv-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing 10A Wright & Miller, *Federal Practice & Procedure* § 2688 (3d ed. 1998)).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, No. 12-cv-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations in the complaint. *Id.* at *2-3.

### A. Personal Jurisdiction and Service of Process

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one

2

days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

### 1. Personal jurisdiction

Personal jurisdiction, unlike subject matter jurisdiction, may be waived, and a court generally will not raise personal jurisdiction *sua sponte* as grounds for dismissal. *See Allaham v. Naddaf*, 635 F. App'x 32, 36 (3d Cir. 2015). Nonetheless, when a default judgment is requested, a court is required to make a threshold determination regarding any jurisdictional defects. *See id.*; *Bolden v. Se. Penn. Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991) (citing *Mansfield, Coldwater & Lake Michigan R.R. v. Swan*, 111 U.S. 379, 382 (1884)). If a court lacks personal jurisdiction over a defendant, the court does not have authority to render a default judgment, and any such judgment will be deemed void. *Budget Blinds, Inc. v. White*, 536 F.3d 244, 258 (3d Cir. 2008). "In the absence of an evidentiary hearing, a plaintiff's complaint need only establish a *prima facie* case of personal jurisdiction." *Allaham*, 635 F. App'x at 36-37 (citing *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010); *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009)). If an evidentiary hearing is held, a plaintiff bears the burden of proving that the court has personal jurisdiction over the defendant by a preponderance of the evidence. *See Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 167 (3d Cir. 2012); *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state." *Metcalfe*, 566 F.3d at 330; *see* Fed. R. Civ. P. 4(k)(1)(A) (authorizing the exercise of personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"). In a state such as New Jersey, where the long-arm statute allows the exercise of personal jurisdiction to the full extent permitted by the Constitution, the standard for a federal court sitting in diversity is whether a

3

"defendant ha[s] 'minimum contacts,'" such "that the exercise of jurisdiction comport[s] with 'tradition notions of fair play and substantial justice.'" *Allaham*, 635 F. App'x at 37 (*Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

There are two distinct theories under which personal jurisdiction can arise: general and specific. *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). A court has general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). A court has specific jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could "reasonably anticipate being haled into [the state's] court[s]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)) (internal quotation marks omitted).

Celgene does not claim that this court has general jurisdiction over Distinct Pharma. Rather, Celgene argues that the court has specific jurisdiction because Distinct Pharma sells its allegedly infringing pharmaceuticals in places including New Jersey.

To satisfy federal due process limits (incorporated by the New Jersey long-arm statute), a defendant's minimum contacts are examined in relation to "the nature of the interactions and type of jurisdiction asserted." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006). "[T]he relationship among the defendant, the forum, and the litigation ... [is] the central concern of the inquiry into personal jurisdiction." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). For specific jurisdiction, the Supreme Court has delineated three due process requirements: First, the plaintiff must demonstrate that the defendant "purposefully directed [its] activities at the forum." *O'Connor*, 496 F.3d at 317 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)) (internal quotation marks omitted). Second, "the litigation must 'arise out of or relate to'

4

at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the plaintiff satisfies the first two requirements, "a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 476) (internal quotation marks omitted).

A defendant can be subject to personal jurisdiction in a state it never entered:

> Jurisdiction in these circumstances may not be avoided merely because the defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476.

Celgene has pled a prima facie case of specific jurisdiction. First, Celgene alleges that Distinct Pharma purposefully directed its activities to New Jersey. It is alleged that Distinct Pharma sold pharmaceutical products directly to customers in New Jersey (and elsewhere in the United States). (Compl. ¶ 22) *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884-86 (2011) (noting the difference, for personal jurisdiction purposes, between directly selling products to a forum and products that end up in a forum because of the stream of commerce). Second, the litigation arises out of this activity. Those alleged New Jersey sales are sales of the very products that, according to Celgene's complaint, violate federal and state trademark and unfair competition laws. Third, the exercise of jurisdiction comports with "fair play and substantial justice." Factors to consider in this inquiry include "the burden on the

5

defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *see also Burger King*, 471 U.S. at 477. These factors do not weigh against a finding of personal jurisdiction.

### 2. Service of process

Service of process must satisfy both the statute under which service is effectuated and constitutional due process. When the defendant resides abroad, the statutory prong is governed principally by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, an international treaty that has been ratified by several countries, including the United States and India. As a ratified treaty, the Hague Convention is "the supreme Law of the Land." *See* U.S. Const. Art. VI, cl. 2; *Ackermann v. Levine*, 788 F.2d 830, 838-39 (2d Cir. 1986).

Article 15 of the Hague Convention permits a default judgment based on service of a foreign defendant as long as:

> (a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
> (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

*Convention Done at the Hague Nov. 15, 1965*, art. 15, 20 U.S.T. 361.

Article 5 of the Convention permits service via a "Central Authority" of the country in which service is to be made.[2] Celgene has submitted an affidavit

---

[2] Articles 2 and 5 of the Hague Convention delineate how a plaintiff can effectuate process on an international party through a "Central Authority."

Article 2 provides, in pertinent part:

6

attesting that the appropriate documents were delivered to the "Central Authority" of India on August 16, 2017. (ECF No. 7).

In its prior motion, Celgene relied on a backstop provision of the Hague Convention which essentially presumes service where process has been delivered to the foreign authority and where, despite reasonable efforts, a period of six months has elapsed without receipt of a certificate.[3] I held that Celgene had not made an adequate showing under this backstop provision that Distinct Pharma had been notified of the pendency of this action in a manner consistent with due process. (Opinion, DE 10)

---

> Each contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States and to proceed in conformity with the provisions of articles 3 to 6.

Hague Convention, Art. 2.

> Article 5 provides, in pertinent part:
>
> The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—
>
> > (a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
> >
> > (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Hague Convention, Art. 5.

3  Those conditions, more formally, are as follows:

> (a) the document was transmitted by one of the methods provided for in this Convention,
>
> (b) a period of time of not less than six months, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,
>
> (c) no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed.

Hague Convention, Art. 15.

7

Now, however, Celgene has returned to court with proof of actual service on Distinct Pharma. (DE 12) The Government of India, Ministry of Law & Justice, Department of Legal Affairs (Judicial Section), certifies that, in response to the U.S. request for judicial assistance, Distinct Pharma was duly served in person on April 23, 2018. (*Id.*) It was based on that service and Distinct Pharma's failure to appear or defend that the Clerk properly entered default.

### B. *Gold Kist* Factors

I next evaluate the following three factors: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir. 1985); *accord Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

#### 1. Meritorious defense

As to *Gold Kist* factor number one, my review reveals no suggestion that Celgene's claims are legally flawed or that Distinct Pharma possesses a meritorious defense to them.

The central claim of the complaint is one of trademark infringement. A claim of infringement under the Lanham Act, 15 USC. § 1051, requires the plaintiff to establish that

(1) the mark is valid and legally protectable;

(2) the mark is owned by the plaintiff; and

(3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services.

*Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005) (line breaks added). "If the mark at issue is federally registered and has become incontestable, then validity, legal protectability, and ownership are proved. Otherwise, validity depends on proof of secondary meaning, unless the

8

unregistered or contestable mark is inherently distinctive." *Vista India v. Raaga, LLC*, 501 F. Supp. 2d 605, 612 (D.N.J. 2007) (quoting *Commerce Nat'l Ins. Services, Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000)).

Factually, the complaint alleges as follows:

Celgene is a global biopharmaceutical company and is the owner of all proprietary rights in and to the drug REVLIMID® (lenalidomide). REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), for treatment of previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS).

Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world. *See* U.S. Reg. No. 3,255,216; U.S. Reg. No. 3,074,309; U.S. Reg. No. 2,925,808. The latter has acquired incontestable status. 15 U.S.C. §1065.

The complaint alleges that Distinct Pharma, without authorization, uses the REVLIMID mark in connection with the sale of the same drug, lenalidomide. REVLIMID, it appears, is distinctive and would not be taken for anything but a trademark owned by Celgene.

The complaint adequately states a claim of trademark infringement, and no meritorious defense is apparent from the filings now before the court.

### 2. Prejudice, culpability of defaulting party

The second and third factors also weigh in favor of default. Defendant was properly served but has failed to appear and defend itself in any manner. *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, CIV. 11-624 JBS/JS, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (finding that "Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion."). Absent any evidence to the contrary, "the Defendant[s'] failure to answer evinces the Defendant[s'] culpability in [the] default. *Id.* And "[t]here is nothing before the Court to show that the

Defendant[s'] failure to file an answer was not willfully negligent." *Id.* at *4 (citing *Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403, at *1 (D.N.J. Feb. 27, 2009) (finding that when there is nothing before the court to suggest anything other than that the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment)).

Accordingly, I find that the entry of a default judgment is appropriate.

### C. Remedy

Celgene seeks a default judgment awarding permanent injunctive relief. To grant a permanent injunction, the court must apply four familiar factors:

(1) the moving party has shown actual success on the merits;

(2) the moving party will be irreparably injured by the denial of injunctive relief;

(3) the granting of the permanent injunction will not result in even greater harm to the non-moving party; and

(4) the injunction would be in the public interest.

*Gucci America, Inc. v. Daffy's, Inc.*, 354 F.3d 228, 236-37 (3d Cir. 2003) (trademark case; line breaks added for clarity).

For the reasons stated above, Celgene has adequately demonstrated that it is entitled judgment. It has established the elements of an infringement claim on the merits.

Irreparable injury is often found in trademark infringement claims, because damages are difficult to quantify and impairment of the trademark holder's business good will and reputation is manifest. *See Gucci*, 354 F.3d at 237. Where the field is ethical pharmaceuticals and the rights in question are exclusive rights to sell a cancer drug, such considerations are often a matter of common sense. The potential damage to Celgene's reputation, moreover, overlaps with the public interest, discussed below.

There is no cognizable harm to Distinct Pharma. By hypothesis, it is an infringer, and has no legitimate right to market the drug (whether or not under the REVLIMID trademark, *see infra*).

Finally, the public interest favors an injunction. There is a public interest in the protection of trademarks. Here, that interest is intertwined with the critical public interest in regulation of pharmaceuticals. Because of the potential toxicity of this drug, and to minimize the chance of fetal exposure, this drug is approved for marketing only under a special restricted distribution program, known as REVLIMID REMS® in the United States. Only prescribers and pharmacists registered to do so may prescribe and dispense REVLIMID®. Distinct Pharma's sales, in addition to violating Celgene's trademark, are in violation of the requirements of the REVLIMID REMS® program. The consuming public is placed in danger by Distinct Pharma's unauthorized use of the REVLIMID® mark in connection with its unauthorized distribution of lenalidomide outside of the controls established by the FDA.

The permanent injunctive relief sought is therefore appropriate.

## II.  CONCLUSION

For the foregoing reasons, Celgene's motion for default judgment is granted, and a permanent injunction will be entered in the form proposed by Celgene.

Dated: March 13, 2019

**KEVIN MCNULTY**
**United States District Judge**

11